UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

KEVIN J. MURRAY

        Plaintiff,

-vs-

TIMOTHY F. GEITHNER, Secretary, U.S. Department of Treasury, and BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,

        Defendants.
        _____/

CIVIL NO. 08-15147

HON. LAWRENCE P. ZATKOFF
MAG. JUDGE MONA K. MAJZOUB

**BRIEF IN REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff's opposition fails to demonstrate that plaintiff has suffered a cognizable injury-in-fact due to his status as a federal taxpayer, and therefore plaintiff lacks standing to invoke this Court's jurisdiction.  In addition, plaintiff has failed to allege a plausible Establishment Clause claim.  Accordingly, this case must be dismissed.

**ARGUMENT**

**I.    PLAINTIFF FAILS TO DEMONSTRATE HIS STANDING UNDER ARTICLE III**

Plaintiff has failed to demonstrate that he has suffered a cognizable injury-in-fact sufficient to allow him to invoke this Court's jurisdiction.  Plaintiff does not purport to contest that his interest as a federal taxpayer in the $40 billion provided to AIG pursuant to the Secretary's authority under the Emergency Economic Stabilization Act of 2008 ("EESA"), 12 U.S.C. § 5201, *et seq.*, "is shared with millions of others" and "comparatively minute and indeterminable."  *Hein v. Freedom from Religion Fdn.*, 551 U.S. 587, 127 S.Ct. 2553, 2563 (2007) (quoting *Frothingham v. Mellon*, 262 U.S. 447, 487 (1923)).  Accordingly, there is no dispute that under the Supreme Court's ordinary "case or controversy" jurisprudence he would have "no basis . . . for an appeal to the preventative powers of a court of equity."  *Id.*  Instead, plaintiff relies on the "narrow exception to the general constitutional prohibition against taxpayer standing" that is derived from the Supreme Court's decision in *Flast v. Cohen*, 392 U.S. 83 (1986).  *Id.* at 2564.  This reliance is misplaced.

Plaintiff's view that *Flast*, and the Supreme Court's decision in *Bowen v. Kendrick*, 487 U.S. 589 (1988), is the "controlling authority" for purposes of deciding whether plaintiff has standing is telling.  Plaintiff attempts to extend *Flast* to the logical limits of its holding, but since *Flast* was decided the Supreme Court has consistently "'limit[ed] the expansion of federal

taxpayer and citizen standing in the absence of specific statutory authorization to an outer boundary drawn by the results in *Flast*.'" *Hein*, 127 S.Ct. at 2569 (quoting *United States v. Richardson*, 418 U.S. 166, 196 (1974) (Powell J., concurring)).  And, "[i]t is significant that, in the four decades since its creation, the *Flast* exception has largely been confined to its facts," *see id.* at 2568-69, because this case is distinguishable from *Flast* in important respects.

First, unlike the statute at issue in *Flast*, which *mandated* the expenditure of federal money,[1] the expenditure of funds under the EESA, including the $40 billion dollar purchase of AIG preferred stock, is within the *discretionary* authority of the Secretary.  *See* 12 U.S.C. § 5211 ("The Secretary is *authorized* to . . . make and fund commitments to purchase, troubled assets from any financial institution . . . .").  This difference is critical because "in the four decades since *Flast* was decided, [the Supreme Court has] never extended its narrow exception to a purely discretionary Executive Branch expenditure," like the expenditure challenged here.  *Hein*, 127 S.Ct. at 2572.[2]  Second, unlike the 89th Congress, which the Supreme Court reasonably

---

[1] *See Flast*, 392 U.S. at 85 ("Appellants filed suit in the United States District Court for the Southern District of New York to enjoin the allegedly unconstitutional expenditure of federal funds under Titles I and II of the Elementary and Secondary Education Act of 1965, 79 Stat. 27, 20 U.S.C. ss 241a et seq., 821 et seq. (1964 ed., Supp. II)."); Elementary and Secondary Education Act of 1965, Pub. L. No. 89-10, tit. I, § 202, 79 Stat. 27 (1965) ("The Commissioner *shall*, in accordance with the provisions of this title, make payments to State educational agencies for basic grants to local educational agencies. . . .") (emphasis added); *id.* at tit. I, § 207(a)(1), 79 Stat. 32 ("The Commissioner *shall*, . . . , from time to time pay to each State, in advance or otherwise, the amount which the local educational agencies of that State are eligible to receive under this title.") (emphasis added); *id.* at tit. II, § 204(a), 79 Stat. 38 ("From the amounts allotted to each state under section 202 the Commissioner *shall* pay to that State an amount equal to the amount expended by the State in carrying out its State plan.") (emphasis added).

[2] Plaintiff's attempt to distinguish *Hein* by arguing that the EESA "mandated" the Secretary to purchase assets from financial institutions and that the Secretary "could not use funds to buy office furniture," Pl. Opp. at 14, is wrong on both counts.  *See* 12 U.S.C. § 5211 (giving Secretary *discretion* to purchase troubled assets); 12 U.S.C. § 5228 (appropriating funds for the payment of administrative expenses, including the purchase of office furniture).

presumed to have known that "the great majority of nonpublic elementary and secondary schools in the United States were associated with a church" when it enacted the Elementary and Secondary Education Act at issue in *Flast*, it is simply not plausible to claim that the 110th Congress that enacted the EESA would have "surely understood that much of the aid mandated by the statute would find its way to religious [institutions]." *Hein*, 127 S.Ct. at 2565 n.3. The Secretary's authority to purchase troubled assets pursuant to the EESA is limited to purchases from "financial institutions" – not religious institutions. 12 U.S.C. § 5211(a). And, while it may be plausible to suggest that Congress may have contemplated that some of the funds appropriated by EESA would be used to purchase troubled assets from AIG, that possibility is irrelevant to the standing inquiry because AIG is not a religious institution.[3]

Plaintiff's reliance on *Kendrick* is misplaced for the same reason. As the Supreme Court recognized in *Hein*, central to the Supreme Court's finding of standing to mount an as-applied challenge in *Kendrick* was the fact that the statute at issue, the Adolescent Family Life Act, "expressly contemplated that some of [the appropriated funds] might go to projects involving religious groups." *Hein*, 127 S.Ct. at 2567 & n.6 (noting that the statute expressly emphasized that funds should be made available to religions organizations). The EESA does not contemplate that the Secretary will purchase troubled assets from religious institutions and, therefore, plaintiff has failed to plausibly allege that "the challenged enactment exceeds specific

---

[3] *Cf. Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 825-26, 843 (1995) (holding that a student organization was "not a religious institution" notwithstanding the fact that it "was established to publish a magazine of philosophical and religious expression, to facilitate discussion which fosters an atmosphere of sensitivity to, and tolerance of Christian viewpoints, and to provide a unifying focus for Christians of multicultural backgrounds," and had a "two-fold mission: to challenge Christians to live, in word and deed, according to the faith they proclaim and to encourage students to consider what a personal relationship with Jesus Christ means." (internal quotation marks omitted)).

constitutional limitations imposed upon the exercise" of congressional power.  *Flast*, 392 U.S. at 102-03.  As a result, he fails to fit within *Flast's* narrow exception to the general rule barring taxpayer standing.[4]

## II.     PLAINTIFF'S ESTABLISHMENT CLAUSE CLAIM IS MERITLESS

Plaintiff also fails to state a plausible claim that Congress's enactment of the EESA or any action of the Secretary pursuant to the authority delegated by the EESA has "the 'purpose' or 'effect' of advancing or inhibiting religion."  *Zelman v. Simmons-Harris*, 536 U.S. 639, 648-49 (2002) (quoting *Agostini v. Felton*, 521 U.S. 203, 222-23 (1997)).  Plaintiff concedes that the government's purpose must be examined through the eyes of the "objective observer, one who takes account of the traditional external signs that show up in the text, legislative history, and implementation of the statute."  Pl. Opp. at 16 (quoting *McCreary Country v. A.C.L.U.*, 545 U.S. 844, 862 (2005)).  But, plaintiff is not an "objective observer," *see* Compl. ¶ 3, and his presumption that Congress both knew that AIG sold shariah-compliant insurance products when it enacted the EESA, and was secretly motivated by this fact to authorize the Secretary to purchase $700 billion in troubled assets in the hope that some of that money might find its way to this business is *objectively* absurd.  In fact, the text, the legislative history, and the exercise of EESA's delegated authority at issue in this case all clearly demonstrate an exclusively secular purpose: to protect the American economy from the consequences of the sudden failure of a systematically significant financial institution.  *See, e.g.*, 12 U.S.C. § 5201; 154 Cong. Rec.

---

[4] The Court may also dismiss the complaint for lack of prudential standing.  *See Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 120 (1979) ("A plaintiff who alleges sufficient injury to satisfy [Article III's] limitations on federal jurisdiction may nonetheless be barred from federal court under our prudential standing rules because he asserts a generalized grievance shared in substantially equal measure by all or a large class of citizens. . . .") (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208 (1974)).

H10702-06 (Oct. 3, 2008); 154 Cong. Rec. H10712-02 (Oct. 3, 2008); SSFI Program Description (Ex. M to Def. Br.). Thus, plaintiff alleges no facts from which it could plausibly be found that Congress acted here with a "predominant purpose of advancing religion." *McCreary County*, 545 U.S. at 860.

Plaintiff's attempt to argue that the EESA has the effect of advancing the Islamic religion is just as far-fetched. None of the three factors relevant to determining whether a government aid program has the impermissible effect of advancing religion supports plaintiff's claim. *See Mitchell v. Helms*, 530 U.S. 793, 808 (2000); *see also* Pl. Opp. at 20. First, even if plaintiff had made plausible allegations that AIG is engaged in "indoctrination" by offering Shariah-compliant insurance products – and, in fact, he hasn't – any such indoctrination "could not reasonably be attributed to governmental action" because the benefits of the EESA are "offered to a broad range of [financial institutions] without regard to their religion." *Mitchell*, 530 U.S. at 809 (citing cases); *see also Johnson v. Econ. Dev. Corp. of County of Oakland*, 241 F.3d 501, 513 (6th Cir. 2001) (concluding that county's issuance of tax exempt bonds on behalf of religious school does not result in government indoctrination). Second, plaintiff concedes that the EESA does not define its recipients by reference to religion. Pl. Opp. at 20. Finally, plaintiff has not plausibly alleged that the EESA results in an "excessive entanglement" between government and religion, but actually alleges that the government cannot control the day-to-day operations of AIG, let alone the day-to-day operation of AIG's subsidiaries that offer Shariah-compliant insurance products. *See* Compl. ¶ 25. Accordingly, the "sovereign" is not engaging in or "pervasive[ly] monitoring" religious activities, and plaintiff has failed to state a cognizable Establishment Clause claim. *Agostini*, 521 U.S. at 233. This case must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court grant defendants' motion to dismiss.

Respectfully submitted,

Dated: April 8, 2009

MICHAEL F. HERTZ
Acting Assistant Attorney General

TERRENCE G. BERG
United States Attorney

JAMES J. GILLIGAN
Assistant Director

s/ John R. Coleman
JOHN R. COLEMAN
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6118
Washington, D.C. 20530
Telephone: (202) 514-4505
Email: John.Coleman3@usdoj.gov

- 7 -

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 8, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: Robert J. Muise, David Yerushalmi.

                                                      s/ John R. Coleman
                                                      JOHN R. COLEMAN (VA Bar # 70908)
                                                      Trial Attorney, U.S. Department of Justice
                                                      Civil Division, Federal Programs Branch
                                                      20 Massachusetts Ave., N.W., Room 6118
                                                      Washington, D.C. 20530
                                                      Telephone: (202) 514-4505
                                                      Facsimile: (202) 616-8460
                                                      Email: John.Coleman3@usdoj.gov