UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

KEVIN J. MURRAY

               Plaintiff,

     -vs-

TIMOTHY F. GEITHNER, Secretary, U.S.
Department of the Treasury, and BOARD OF
GOVERNORS OF THE FEDERAL
RESERVE SYSTEM,

               Defendants.

_____/

CIVIL NO. 08-15147

HON. LAWRENCE P. ZATKOFF
MAG. JUDGE MONA K. MAJZOUB

## DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

     Defendants Timothy F. Geithner, Secretary of the United States Department of the

Treasury, and the Board of Governors of the Federal Reserve System, through their undersigned

counsel, respectfully move this Court for a protective order, pursuant to Fed. R. Civ. P. 26(c),

barring plaintiff from deposing the Secretary of the Treasury, Timothy F. Geithner.  On January

15, 2010, there was a conference between the attorneys representing the parties during which

counsel for Defendants explained the nature of this motion and its legal basis.  Counsel for

Defendants requested but did not obtain concurrence in the relief sought through this motion, nor

were the parties able to resolve their dispute without a ruling from the Court.

                         Respectfully submitted,

                         TONY WEST
                         Assistant Attorney General

                         TERRENCE G. BERG
                         United States Attorney

                         JOHN R. GRIFFITHS
                         Assistant Director, Federal Programs Branch

1

s/ *Julie Straus*          
JULIE STRAUS
JOHN R. COLEMAN
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6126
Washington, D.C. 20530
Telephone: (202) 514-7857
Email: Julie.Straus@usdoj.gov

Attorneys for Defendants

DATED: January 15, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

KEVIN J. MURRAY

                Plaintiff,

      -vs-

TIMOTHY F. GEITHNER, Secretary, U.S.
Department of the Treasury, and BOARD OF
GOVERNORS OF THE FEDERAL
RESERVE SYSTEM,

                Defendants.
_____/

CIVIL NO. 08-15147

HON. LAWRENCE P. ZATKOFF
MAG. JUDGE MONA K. MAJZOUB

**<u>MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
DEPOSITION OF DEFENDANT TIMOTHY F. GEITHNER
AND IN SUPPORT OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER</u>**

**ISSUE PRESENTED**

If the Court determines that it has subject matter jurisdiction, whether it should deny

Plaintiff's motion to compel the deposition of the Secretary of the Treasury, Timothy F.

Geithener, and issue a protective order barring Plaintiff from deposing Secretary Geithner.

# MOST PERTINENT AUTHORITY

Fed. R. Civ. P. 26

*In re United States (Holder)*, 197 F.3d 310 (8th Cir. 1999)

*In re United States (Kessler)*, 985 F.2d 510 (11th Cir. 1993)

*McCreary County, Ky. v. Am. Civil Liberties Union*, 545 U.S. 844 (2005)

*United States v. Morgan*, 313 U.S. 409 (1941)

*Warren Bank v. Camp*, 396 F.2d 52 (6th Cir. 1968)

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      REQUESTS TO COMPEL THE TESTIMONY OF CABINET LEVEL
OFFICIALS ARE DISFAVORED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.     PLAINTIFF IS NOT ENTITLED TO DEPOSE SECRETARY
GEITHNER BECAUSE EXTRAORDINARY CIRCUMSTANCES
DO NOT EXIST HERE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       A.    The Information Plaintiff Seeks Is Not "Essential" To His Claim. . . . . . 10

             1.    *Information Relating to the FRBNY's Exercise of Authority
Under the Federal Reserve Act Is Not Relevant to Plaintiff's
Claim.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

             2.    *Information Relating to the Decisions to Provide Funds
to AIG That is Not Readily Available to the Public is
Irrelevant.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

             3.    *To the Extent the Information Sought from Secretary
Geithner is Marginally Relevant, it is Likely Privileged.* . . . . . . . 14

       A.    The Information Plaintiff Seeks Has Been Or Can Be Obtained
From Other Sources. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

<u>CASES</u>

*Am. Atheists, Inc. v. Detroit Downtown Dev. Auth.*, 567 F.3d 278 (6th Cir. 2009).. . . . . . 4, 11, 13

*Bogan v. City of Boston*, 489 F.3d 417 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

*Boudreau v. Bouchard*, 2008 WL 4386836 (E.D. Mich. Sept. 25, 2008). . . . . . . . . . . . . . . . . 19

*Boudreau v. Bouchard*, 2009 WL 55912 (E.D. Mich. Jan. 8, 2009). . . . . . . . . . . . . . . . . . . . . . 19

*Community Fed. Savings & Loan Ass'n v. Fed. Home Loan Bank Bd.*,
    96 F.R.D. 619 (D.D.C. 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001). . . . . . 7, 14-15

*Edwards v. Aguillard*, 482 U.S. 578 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ex Parte McCardle*, 7 Wall 506 (1868).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Fisher v. United States*, 425 U.S. 391 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hunt v. McNair*, 413 U.S. 734 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re FDIC*, 58 F.3d 1055 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*In re United States (Holder)*, 197 F.3d 310 (8th Cir. 1999). . . . . . . . . . . . . . . . 1, 6, 8-9, 15, 18

*In re United States (Kessler)*, 985 F.2d 510 (11th Cir. 1993). . . . . . . . . . . . . . . . . . . . 1, 6-7, 8, 9

*Jackson v. City of Detroit*, 2007 WL 2225886 (E.D. Mich. Aug. 1, 2007). . . . . . . . . . . . . . . . . 19

*Kyle Engineering Co. v. Kleppe*, 600 F.2d 226 (9th Cir. 1979).. . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McCreary County, Ky. v. Am. Civil Liberties Union*, 545 U.S. 844 (2005). . . . . . . . . . 12, 13, 14

*Murray v. Geithner*, 624 F. Supp. 2d 667 (E.D. Mich. 2009). . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

*N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pedreira v. Ky. Baptists Homes for Children, Inc.*, 579 F.3d 722 (6th Cir. 2009). . . . . . . . . . . . 4

*Peoples v. United States Dep't of Agric.*, 427 F.2d 561 (D.C. Cir. 1970). . . . . . . . . . . . . . . . . . . 7

*Ross v. City of Memphis*, 423 F.3d 596 (6th Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Santa Fe Independent School Dist. v. Doe*, 530 U.S. 290 (2000). . . . . . . . . . . . . . . . . . . . . . . . 13

*Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575 (D.C. Cir. 1985).. . . . . . . . . . . . . . 6

*Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*United States v. Morgan*, 313 U.S. 409 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Village of Arlington Heights v. Metropolitan Housing Dev.*, 429 U.S. 252 (1977). . . . . . . . . . . . 8

*Walker v. NCNB Nat'l Bank*, 810 F. Supp. 11 (D.D.C. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Warren Bank v. Camp*, 396 F.2d 52 (6th Cir. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zelman v. Simmons-Harris*, 536 U.S. 639 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATUTES

Emergency Economic Stabilization Act of 2008, 12 U.S.C. § 5201 *et seq.*. . . . . . . . . . . . . *passim*

Section 13(3) of the Federal Reserve Act, 12 U.S.C. § 343. . . . . . . . . . . . . . . . . . . . . . . . *passim*

12 U.S.C. § 5228. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

12 U.S.C. § 5235. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 1292(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

## OTHER AUTHORITY

Fed. R. Civ. P. 12(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

Fed. R. Civ. P. 26(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

Fed. R. Civ. P. 30(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Civ. P. 30(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17, 18

Fed. R. Civ. P. 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17

Fed. R. Civ. P. 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Government Accounting Office, Federal Financial Assistance: Preliminary
    Observations on Assistance Provided to AIG *available at* www.gao.gov. . . . . . . . . . . . 16

Government Accounting Office, Troubled Asset Relief Program: Status of
    Government Assistance Provided to AIG *available at* www.gao.gov.. . . . . . . . . . . . . . 16

Joint Economic Committee, *The Economic Outlook* (September 24, 2008). . . . . . . . . . . . . . . . 17

Minutes of Meetings of the Federal Reserve Board of Governors
    (July 13 - December 16, 2008), at 3, *available at*
    http://www.federalreserve.gov/newsevents/press/monetary/20090311a.htm. . . . 10, 16-17

Restructuring of the Government's Financial Support to American International
    Group, Inc. on November 10, 2008 *available at*
    http://www.federalreserve.gov/monetarypolicy/bst_reports.htm.. . . . . . . . . . . . . . . . . . 16

Restructuring of the Government's Financial Support to American International
    Group, Inc. on March 2, 2009 *available at*
    http://www.federalreserve.gov/monetarypolicy/bst_reports.htm.. . . . . . . . . . . . . . . . . . 16

Section 105(a) Report dated December 5, 2008 *available at*
    http://www.financialstability.gov/latest/reportsanddocs.html. . . . . . . . . . . . . . . . . . . . . 16

Section 105(a) Report dated April 10, 2009 *available at*
    http://www.financialstability.gov/latest/reportsanddocs.html. . . . . . . . . . . . . . . . . . . . . 16

Special Inspector General for the Troubled Asset Relief Program,
    Extent of Federal Agencies' Oversight of AIG Compensation Varied,
    and Important Challenges Remain *available at* http://www.sigtarp.gov. . . . . . . . . . . . . 16

Special Inspector General for the Troubled Asset Relief Program,
    Factors Affecting Efforts to Limit Payments to AIG Counterparties
    *available at* http://www.sigtarp.gov. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Special Inspector General for the Troubled Asset Relief Program,
    Initial Report to the Congress *available at* http://www.sigtarp.gov. . . . . . . . . . . . . . . . . 16

Tranche Report dated December 2, 2008 *available at*
    http://www.financialstability.gov/latest/reportsanddocs.html. . . . . . . . . . . . . . . . . . . . . . 16

U.S. House Committee on Financial Services, *Oversight of the Federal
    Government's Intervention at American International Group*
    (March 24, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

U.S. Senate Committee on Banking, Housing, and Urban Affairs,
    *American International Group: Examining What Went Wrong,
    Government Intervention, and Implications for Future Regulation*
    (March 5, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# INTRODUCTION

Courts have long recognized that a litigant may not depose a high-level government official absent "extraordinary circumstances," and that such circumstances exist only when a party seeking testimony from a high-level government official establishes that the information sought from that official <u>both</u> is "essential to his case[,] . . . relevant and necessary" <u>and</u> "cannot otherwise be obtained."  *See In re United States (Holder)*, 197 F.3d 310, 314 (8th Cir. 1999) (citing *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993)).  This rule disfavoring the depositions of cabinet-level officials is founded in significant pragmatic and constitutional concerns: in addition to the substantial practical burdens that would be imposed on such officials if they were to be deposed about every decision they have made that later becomes the subject of litigation, courts have recognized the significant constitutional issues that would result if the judicial power were used to probe the decision-making processes of a co-equal branch of government.

Notwithstanding this clear rule, Plaintiff moves to compel the deposition of the Secretary of the Treasury, Timothy F. Geithner ("Secretary Geithner" or "the Secretary"), to support his claim that the Department of the Treasury's purchase of $40 billion of American International Group, Inc. ("AIG") preferred stock in November 2008 violates the Establishment Clause because one domestic and a few foreign subsidiaries of AIG offer Shariah-compliant financial and insurance products.[1]  Plaintiff, however, cannot demonstrate extraordinary circumstances

---

[1]  In their opposition to Plaintiff's pending Motion for Leave to File an Amended Complaint, Defendants raised a substantial challenge to the Court's subject-matter jurisdiction based on Sixth Circuit precedent issued subsequent to the Court's ruling on Defendants' motion to dismiss.  Defendants respectfully submit that this issue must be resolved before the Court resolves the instant discovery dispute.  *See* Fed. R. Civ. P. 12(h)(3); *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 94 (1998) ("'Without jurisdiction the court cannot proceed at all in any

justifying this request.  First, the information Plaintiff seeks by deposing Secretary Geithner is

not essential to his case.  It is of marginal or no relevance (let alone necessity) to the claim he

asserts, and, to the extent it is marginally relevant, it is likely protected from disclosure by the

deliberative process privilege and/or the attorney-client privilege.  Second, Plaintiff has not

demonstrated that the information he seeks is unobtainable from other sources.  Whatever non-

privileged information Plaintiff seeks has already been disclosed through discovery in this case,

is publicly available, or (to the extent not already available) could be sought through other

avenues of discovery, such as interrogatory requests, discovery of third parties, or depositions of

non-cabinet level officials.

    Finally, as Plaintiff's motion makes plain, the primary reason he seeks to depose the

Secretary is to obtain evidence supporting his theory that the Federal Reserve Bank of New

York's ("FRBNY") September 16, 2008 decision to provide to AIG an $85 billion credit facility

pursuant to Section 13(3) of the Federal Reserve Act, 12 U.S.C. § 343, "operated as a

'placeholder'" for the funds provided pursuant to the Emergency Economic Stabilization Act of

2008 ("EESA"), 12 U.S.C. § 5201 *et seq.*, in November 2008.  Pl.'s Mot. at 3.  However,

Plaintiff has not offered any evidence – let alone compelling evidence – supporting this theory; to

the contrary, the public record and the record in this case contain direct evidence dispelling

Plaintiff's "placeholder" theory.[2]  In short, Plaintiff's motion to compel the deposition of

───────────────

cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function
remaining to the court is that of announcing the fact and dismissing the cause.'" (quoting *Ex
parte McCardle*, 7 Wall 506, 514 (1868))).

    [2]  As Defendants explained in their Brief in Reply to Plaintiff's Opposition to
Defendants' Motion For Certification Of This Court's May 26, 2009 Order For Interlocutory
Appeal Pursuant to 28 U.S.C. § 1292(b) And For A Stay Of Proceedings Pending The Appeal,
the EESA had not been enacted, nor even proposed, when the FRBNY provided an $85 billion

Secretary Geithner fails to demonstrate the "extraordinary circumstances" required for the deposition of a high-level government official, would impose an unjustified distraction from Secretary Geithner's greater duties, and should be denied. For the same reasons, Defendants seek an order from the Court forbidding Plaintiff from deposing the Secretary.

## BACKGROUND

Plaintiff alleges that the EESA, 12 U.S.C. § 5201 *et seq.*, as-applied to the Department of the Treasury's November 25, 2008 purchase of $40 billion of AIG preferred stock, violates the Constitution's command that "Congress shall make no law respecting an establishment of religion[,]" U.S. Const. Amd. I., because one domestic and a few foreign subsidiaries of AIG offer Shariah-compliant financial and insurance products. On February 27, 2009, Defendants moved to dismiss this case on the grounds that Plaintiff's status as a federal taxpayer does not give him standing to invoke this Court's jurisdiction, and that Plaintiff had failed to state a claim for violation of the Establishment Clause. The Court denied Defendants' motion to dismiss on May 26, 2009. *See Murray v. Geithner*, 624 F. Supp. 2d 667 (E.D. Mich. 2009).

After the Court issued its Scheduling Order declining Defendants' request to bifurcate and expedite discovery, Defendants moved the Court to certify its May 26, 2009 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and to stay proceedings pending the appeal. In the briefs related to that motion, Defendants argued, largely on the basis of two Sixth Circuit

---

credit facility to AIG on September 16, 2008 ("1292(b) Reply Brief"). Indeed, the Department of the Treasury's initial 3-page proposed bill submitted to lawmakers on the morning of September 20, 2008 (four days after the announcement of the $85 billion credit facility), would not have permitted the Secretary to purchase AIG's preferred stock, but only "mortgage-related assets." *See* Initial Proposal (attached as Exhibit A).

3

opinions issued subsequent to the Court's order,[3] that the Court's May 26, 2009 Opinion and Order involves two "controlling question[s] of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Defendants' motion is still pending.

Also pending before the Court is Plaintiff's motion for leave to file an amended complaint. Relying largely on the same binding precedent found in the aforementioned two recent Sixth Circuit opinions, Defendants have opposed Plaintiff's motion on the ground that Plaintiff's proposed amendments do not cure the Court's lack of subject-matter jurisdiction over his claims. *See* Fed. R. Civ. P. 12(h); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

In the meantime, Plaintiff has sought and received extensive discovery from Defendants. Defendants have produced thousands of pages of documents in response to Plaintiff's Requests for Production of Documents pursuant to Fed. R. Civ. P. 34, and Defendants have produced three witnesses pursuant to Fed. R. Civ. P. 30(b)(6). Two of these witnesses testified about the government's assistance to AIG, and one of these witnesses testified about a seminar on Islamic finance co-hosted by the Department of the Treasury in November 2008. Plaintiff has also deposed a former Treasury Department official, pursuant to Fed. R. Civ. P. 45, about the government's assistance to AIG, and has sought discovery from AIG related to AIG's use of

---

[3] The first case relied on by Defendants is *Am. Atheists, Inc. v. Detroit Downtown Dev. Auth.*, 567 F.3d 278 (6th Cir. May 28, 2009), which clarified the standard for resolving Establishment Clause claims and made clear that taxpayer standing would not exist to challenge "unearmarked funds," such as those appropriated by 12 U.S.C. § 5228. *Id.* at 286. The second case relied on by Defendants is *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722 (6th Cir. 2009), which held that taxpayer standing does not extend to statutes, like the EESA that "do not contemplate religious indoctrination." *Id.* at 731.

funds provided by the FRBNY and/or the Department of the Treasury and AIG's subsidiaries' Shariah-compliant insurance products. Plaintiff has not, however, issued any interrogatories to Defendants, nor has Plaintiff sought any discovery from the FRBNY.

On Wednesday, November 25, 2009, Plaintiff issued a Notice of Deposition to Timothy F. Geithner Pursuant to Fed. R. Civ. P. 30(a)(1) ("Notice of Deposition") (attached as Exhibit B). According to the Notice of Deposition, Plaintiff is requesting that Secretary Geithner testify about the following broad topics:

> The decision(s) to provide government financing to and otherwise bailout American International Group, Inc. (hereinafter "AIG") and how the financing bailout was structured.
>
> a.    This matter specifically includes decisions regarding how and why the original financing provided by the government was funds provided by the Federal Reserve Bank of New York (hereinafter "FRBNY") in the form of a credit facility;
>
> b.    This matter specifically includes the decision by the Fed to authorize the FRBNY to loan $85 billion to AIG pursuant to Section 13(3) of the Federal Reserve Act (12 U.S.C. § 343);
>
> c.    This matter specifically includes decisions requiring AIG to grant the FRBNY a pledge on assets and to sell the AIG Credit Facility Trust (hereinafter "Trust") Series C preferred shares, which provided the Trust, *inter alia*, 79.9% (later reduced to 77.9%) of any dividend payments by AIG and of any aggregate voting rights of AIG common stock;
>
> d.    This matter specifically includes the decision to establish the Trust on behalf of the U.S. Treasury;
>
> e.    This matter specifically includes all subsequent decisions regarding the structuring of the government financing and bailout of AIG, including the decisions about when, how, and why to use (1) funds authorized by the Emergency Economic Stabilization Act of 2008, 12 U.S.C. § 5201 et seq. (hereinafter "EESA"); (2) funds not authorized by EESA but otherwise under the control or authority of the U.S. Treasury and/or Treasury Department; (3) funds under the control or authority of the Federal Reserve Board; (4) funds under the control or authority of the FRBNY; and/or (5) any other funds under the control or authority of any other entity or agency subject to the direction and/or control of the U.S. Treasury and/or Treasury Department, the Federal Reserve Board, and/or the FRBNY.

        f.      This matter specifically includes the actual and permissible use(s) of funds from any government source (including FRBNY) by AIG.

Notice of Deposition at 2-3.

## ARGUMENT

Should the Court determine that it has subject-matter jurisdiction, *see supra* note 1, the Court should nonetheless bar Plaintiff from seeking the testimony of Secretary Geithner. Plaintiff cannot demonstrate the existence of the extraordinary circumstances that are a precondition to compelling the testimony of a high-level government official. The discovery he seeks from the Secretary is not essential to his case, and, in any event, is otherwise obtainable from other sources.

## I.    REQUESTS TO COMPEL THE TESTIMONY OF CABINET-LEVEL OFFICIALS ARE DISFAVORED.

The Supreme Court and federal appellate courts have uniformly held that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *see also United States v. Morgan*, 313 U.S. 409, 421-22 (1941) (suggesting that the practice of calling high-level government officials as witnesses should be discouraged); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (applying general rule disfavoring depositions of high-level government officials unless information cannot be obtained from other sources); *In re United States (Holder)*, 197 F.3d at 313-14 (stating rule that examination of high-level officials is not permitted absent "exceptional circumstances"); *Olivieri v. Rodriguez*, 122 F.3d 406, 409, 410 (7th Cir. 1997) (recognizing burden of discovery to public officials); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) ("exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted"); *In re United*

*States (Kessler)*, 985 F.2d at 512 (suggesting that practice of calling high-level officials as witnesses should be discouraged); *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) ("Heads of government agencies are not normally subject to deposition."); *Peoples v. United States Dept. of Agric.*, 427 F.2d 561, 567 (D.C. Cir. 1970) ("[S]ubjecting a cabinet officer to oral deposition is normally not countenanced.").

This is particularly true when the proposed deposition seeks testimony concerning the internal deliberations of high-level government officials. As Sixth Circuit precedent demonstrates, Plaintiff is "clearly . . . not entitled" to depose Secretary Geithner "in order to probe his mind as to exactly why he [(or his predecessor)] saw fit to exercise his discretion as he did." *See Warren Bank v. Camp*, 396 F.2d 52, 56 (6th Cir. 1968) (holding that plaintiff challenging issuance of a national charter to a new bank by the Comptroller of the Currency was not entitled to depose the Comptroller).

Compelling practical and constitutional considerations justify this rule. First, liberal access to high-level officials during pre-trial discovery would likely exert a chilling effect on such officials, making them less willing to explore and discuss all available options, including controversial ones. *See Walker v. NCNB Nat'l Bank*, 810 F. Supp. 11, 12 (D.D.C. 1993) ("[S]ubjecting officials to interrogation about how they reached particular decisions would impair that decision-making process by making officials less willing to explore and discuss all available options, no matter how controversial."). As the Supreme Court stated, "officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and [the] object is to enhance the 'quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001).

7

Second, as a practical matter, high-level government officials would be paralyzed from carrying out their duties if required to give testimony in the myriad civil actions involving their agencies. *See In re United States (Kessler)*, 985 F.2d at 512 ("High ranking government officials have greater duties and time constraints than other witnesses."). As one district court explained:

> [P]ublic policy requires that the time and energies of public officials be conserved for the public's business to as great an extent as may be consistent with the ends of justice in particular cases. Considering the volume of litigation to which the government is a party, a failure to place reasonable limits upon private litigants' access to responsible government officials as sources of routine pre-trial discovery would result in a severe disruption of the government's primary function.

*Community Fed. Savings & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983).

Finally, the rule that high-level government officials should not be compelled to testify about official decisions absent "extraordinary circumstances" is grounded in constitutional separation-of-powers principles. *See Village of Arlington Heights v. Metropolitan Housing Dev.*, 429 U.S. 252, 268 n. 18 (1977) ("[J]udicial inquiries into legislative or executive motivation represents a substantial intrusion into the working of other branches of government."). As the Supreme Court observed in *Morgan*, "[j]ust as a judge cannot be subjected to such a scrutiny [*i.e.*, oral examination], so the integrity of the administrative process must be equally respected." *Morgan*, 313 U.S. at 422.

## II.    PLAINTIFF IS NOT ENTITLED TO DEPOSE SECRETARY GEITHNER BECAUSE EXTRAORDINARY CIRCUMSTANCES DO NOT EXIST HERE.

Contrary to Plaintiff's suggestion that a court may compel the deposition of a high-level government official when the official has "personal knowledge *relevant to the litigation* that cannot otherwise be *reasonably obtained*," Pl.'s Mot. at 4, to demonstrate that "exceptional circumstances" exist, Plaintiff must "establish *at a minimum* that [Secretary Geithner] possesses

8

information *essential* to his case which is *not obtainable* from another source," *In re United States (Holder)*, 197 F.3d at 314 (emphasis added) (citing *In re United States (Kessler)*, 985 F.2d at 512-13; *In re F.D.I.C.*, 58 F.3d at 1062). Asserting that information is merely "relevant" does not satisfy the minimum requirement of essentiality, and courts assign no significance to how "reasonably" that information can be obtained from another source.

Plaintiff cannot demonstrate the "extraordinary circumstances" necessary to compel the deposition of Secretary Geithner. Indeed, Plaintiff cannot even show that he is entitled to this deposition under the normal relevance requirements for discovery. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant."). Second, even were Secretary Geithner's testimony possibly marginally relevant, it is likely protected by the deliberative process privilege and/or the attorney-client privilege, and therefore would be protected from disclosure. *See id*. Third, even assuming the information Plaintiff seeks is generally discoverable, it has been or can be obtained from other sources. Specifically, whatever non-privileged and relevant information Plaintiff seeks from Secretary Geithner is "unreasonably cumulative or duplicative" of information (1) in the public record, (2) already obtained through discovery, or (3) that could be obtained through less burdensome discovery. Fed. R. Civ. P. 26(b)(2)(C)(i).

In short, Plaintiff's proposed discovery would impose a burden on Secretary Geithner far in excess of any "likely benefit, considering the needs of the case, . . . the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). Plaintiff simply cannot demonstrate the "extraordinary circumstances" that would entitle him to depose the Secretary and, thus, his motion should be denied and a protective order should be entered.

9

### A.    The Information Plaintiff Seeks Is Not "Essential" To His Claim

1.    *Information Relating to the FRBNY's Exercise of Authority Under the Federal Reserve Act Is Not Relevant to Plaintiff's Claim*

As a threshold matter, Plaintiff has failed to demonstrate that the testimony he seeks to elicit from Secretary Geithner is relevant to his only claim — that the EESA, as-applied to the Department of the Treasury's November 25, 2008 purchase of $40 billion of AIG preferred stock, violates the Establishment Clause. Instead, Plaintiff's notice is largely concerned with decisions Secretary Geithner participated in while he served as President of the FRBNY under the authority of Section 13(3) of the Federal Reserve Act, 12 U.S.C. § 343. But Plaintiff has not challenged the constitutionality of the Federal Reserve Act or any action by the FRBNY pursuant to that Act, *see* Compl. ¶ 1, nor would he have standing to do so. *See supra* note 3.

Plaintiff argues that a deposition of Secretary Geithner is necessary for him to "establish the evidentiary foundation for the allegation that [the FRBNY] credit facility was in fact a 'placeholder' for EESA funding that was to follow weeks later once Congress had a chance to pass EESA," but this argument does not satisfy the courts' prerequisites for deposing high-level government officials. Pl.'s Mot. at 7. Plaintiff has produced no evidence supporting this allegation – and the public record is replete with evidence debunking it. *See, e.g.*, Ex. A; Minutes of Meetings of the Federal Reserve Board of Governors (July 13 - December 16, 2008), at 3, *available at* http://www.federalreserve.gov/newsevents/press/monetary/20090311a.htm (minutes from September 16, 2008 meeting regarding extension of credit to AIG attached as Exhibit C). As courts have long recognized, allowing litigants to use depositions of high-level cabinet officials for fishing expeditions is contrary to important pragmatic considerations. High-level government officials would be paralyzed from carrying out their extensive duties if they

were subject to deposition in every civil action against their agency. *Community Fed. Savings & Loan Ass'n*, 96 F.R.D. at 621 ("[A] failure to place reasonable limits upon private litigants' access to responsible government officials as sources of routine pre-trial discovery would result in a severe disruption of the government's primary function.").

Furthermore, Plaintiff cannot use his as-applied challenge to the EESA as a backdoor means to challenge the constitutionality of the Board of Governors of the Federal Reserve System's (the "Board") decisions to loan money to AIG pursuant to the Federal Reserve Act. Plaintiff theorizes that the Department of the Treasury's purchase of preferred stock, the proceeds of which were used exclusively to pay down AIG's debt with the FRBNY, allowed AIG to use other funds—including those provided pursuant to the Federal Reserve Act—to promote its Shariah-compliant insurance products. As the Sixth Circuit recently explained, however, "[t]he Supreme Court has repeatedly rejected 'the recurrent argument that all aid is forbidden because aid to one aspect of an institution frees it to spend its other resources on religious ends." *Am. Atheists*, 567 F.3d at 296 (quoting *Hunt v. McNair*, 413 U.S. 734, 747 & n.14 (1973)). Accordingly, whether funds provided to AIG pursuant to the Federal Reserve Act have had the "purpose or effect" of establishing religion (which they have not) has no bearing on this case, and Plaintiff is not entitled to discovery about the decisions to provide these funds.

As a result, the Board's decision to approve the FRBNY's provision of an $85 billion credit facility to AIG in September 2008, the FRBNY's decision to require AIG to pledge assets as collateral for the loan, the decision to transfer AIG preferred shares convertible into a controlling interest in the company to the AIG Credit Facility Trust, the decision to name the United States Treasury as the ultimate beneficiary of the Trust, and any other decision related to the Board's or the FRBNY's exercise of authority pursuant to the Federal Reserve Act, *see*

11

*generally* Notice of Deposition, are not relevant, let alone essential, to this suit.

        2.      *Information Relating to the Decisions to Provide Funds to AIG That is Not Readily Available to the Public is Irrelevant*

Even if some of the testimony Plaintiff seeks to compel is related to his claim that the EESA as applied to the November 2008 purchase of AIG preferred stock violates the Establishment Clause, Plaintiff cannot demonstrate that such information is relevant. To prevail on his Establishment Clause claim, Plaintiff must demonstrate that the purchase of AIG preferred stock had "the purpose or effect of advancing or inhibiting religion." *Zelman v. Simmons-Harris*, 536 U.S. 639, 648-49 (2002) (internal quotations omitted). Plaintiff's Notice of Deposition—with its focus on "[t]he decisions to provide government financing to" AIG—does not seek information regarding the "effect" of the government's financing of AIG.[4] Rather, Plaintiff appears to be seeking information relating to the "ostensible and predominant purpose" of the decision(s) to provide funds to AIG. *McCreary County, Ky. v. Am. Civil Liberties Union*, 545 U.S. 844, 862 (2005). Yet the public record already contains numerous statements by the Secretary and other high-level officials regarding the "purpose" of the government's assistance to AIG.[5] To the extent Plaintiff seeks details about "[t]he decision(s) to provide government financing to and otherwise bailout [AIG]" that are not publicly available, such information is not relevant, even if Secretary Geithner has personal knowledge thereof.

Such non-public information is irrelevant because an Establishment Clause inquiry into

---

[4] To the extent Plaintiff seeks information about "the actual and permissible use(s) of funds from any government source (including the FRBNY) by AIG[,]" such information is either publicly available or obtainable through discovery of AIG, which Plaintiff has pursued. *See* Notice of Subpoena on AIG, ¶ 7 (attached as Exhibit D).

[5] Deposing any witness for such a purpose would be impermissible under Fed. R. Civ. P. 26(b)(2)(C)(i), and especially so for a cabinet-level official. *See infra* Part II.B.

the official purpose of a government action is based on "readily discoverable fact[s]." *McCreary County*, 545 U.S. at 862. The Court must ask whether an "'objective observer,' . . . who takes account of the traditional external signs that show up in the 'text, legislative history, and implementation of the statute,'" would consider advancement of religion the statute's "predominant purpose." *Id.*; *see also Edwards v. Aguillard*, 482 U.S. 578, 594-95 (1987) (purpose inquiry looks to "plain meaning of the statute's words, enlightened by their context and the contemporaneous legislative history [and] the historical context of the statute, . . . and the specific sequence of events leading to [its] passage."); *Am. Atheists*, 567 F.3d at 290 (determining official purpose from "evidence gleaned from the language of the program, its context, and history.").

Thus, the "Establishment Clause analysis does not look to the veiled psyche of government officers." *McCreary*, 545 U.S. at 863. As the Supreme Court explained, even if this limited inquiry could hypothetically permit "savvy officials [to] disguise[] their religious intent so cleverly that the objective observer . . . missed it[,] . . . that is no reason for great constitutional concern." *Id*. "If someone in the government hides religious motive so well that the 'objective observer, acquainted with the text, legislative history, and implementation of the statute,' cannot see it, then without something more the government does not make a divisive announcement that in itself amounts to taking religious sides." *Id.* (quoting *Santa Fe Independent School Dist. v. Doe*, 530 U.S. 290, 308 (2000)).

Moreover, even if Plaintiff could establish that some Executive Branch official harbored a religious purpose, and even if that undisclosed purpose were somehow relevant, Plaintiff would still be no closer to meeting the applicable test under the Establishment Clause. To be upheld under the Establishment Clause, government action must have a *secular* purpose that is "genuine,

13

not a sham, and not merely secondary to a religious objective." *McCreary*, 545 U.S. at 864. The public record contains ample and indisputable evidence concerning the secular purpose of the purchase of AIG preferred stock. Indeed, the Court itself has recognized that "the pressure upon the government to navigate this financial crisis is unfathomable." *Murray*, 624 F. Supp. 2d at 676. Plaintiff does not, and cannot, assert that deposition of the Secretary will lead to the discovery of evidence that the government's expressed purpose of preventing collapse of the world financial system was a sham or was merely secondary to an undisclosed religious purpose. Accordingly, even if the Secretary knows something about the purpose of the Department of the Treasury's decision to purchase preferred stock from AIG pursuant to the EESA that is not "openly available" to Plaintiff, *McCreary*, 545 U.S. at 863, such information is irrelevant (and non-essential) to Plaintiff's as-applied Establishment Clause claim.

> 3. *To the Extent the Information Sought from Secretary Geithner is Marginally Relevant, it is Likely Privileged*

Finally, even if Plaintiff were able to demonstrate that non-public information regarding "decisions about when, how, and why to use . . . funds authorized by the [EESA]," *see* Notice of Deposition, is essential to his claim, such non-public information is likely not discoverable because it would be protected from disclosure by the deliberative process privilege and/or the attorney-client privilege. The deliberative process privilege protects from disclosure "'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Klamath*, 532 U.S. at 8 (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). "The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the

14

quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Id.* at 8-9 (internal citations and quotation marks omitted).

Much of the information Plaintiff suggests he seeks from the Secretary would also likely be subject to the attorney-client privilege, which protects "[c]onfidential disclosures made by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see also Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005). Although it is not possible to formally assert either privilege without knowing precisely what questions Plaintiff would ask if given the opportunity to depose Secretary Geithner, the fact that much of the information Plaintiff suggests he will seek is likely privileged further shows that the burden a deposition would impose on Secretary Geithner vastly outweighs any possible benefit to Plaintiff from such deposition.

**B.      The Information Plaintiff Seeks Has Been Or Can Be Obtained From Other Sources.**

Even assuming Plaintiff's deposition notice can be read to seek relevant and non-privileged information, Plaintiff cannot demonstrate that "no one else could provide the information he seeks" from Secretary Geithner. *In re United States (Holder),* 197 F.3d at 314. Plaintiff's suggestion that Secretary Geithner is "uniquely situated" to testify about the U.S. Department of the Treasury's November 2008 decision is incongruous, as Mr. Geithner was not an employee or official of the Department at that time. Moreover, the public record is replete with information regarding the rationale for these decisions. The Department of the Treasury has numerous reporting requirements under the EESA, *see* 12 U.S.C. § 5215, and has provided

15

explanations for its decision to support AIG in these published reports.[6]  Likewise, the Board has made publicly available reports, also required by the EESA, *see* 12 U.S.C. § 5235, that provide justification for any exercise of its authority under Section 13(3) of the Federal Reserve Act, including for the benefit of AIG, and the specific terms of any loan.[7]

Moreover, the Board has made publicly available the minutes from its September 16, 2008 meeting, at which it first authorized the FRBNY to extend credit to AIG pursuant to Section 13(3) of the Federal Reserve Act.[8]  Numerous oversight bodies have issued a number of reports regarding the government's involvement with AIG,[9] and, of course, the operative contracts for every transaction between either the FRBNY or the Department of the Treasury and AIG are available through the Securities and Exchange Commission's EDGAR website.[10] Finally, Secretary Geithner and other high-level government officials have testified publicly to Congress regarding "[t]he decision(s) to provide government financing to and otherwise

---

[6]  *See, e.g.*, Section 105(a) Report dated December 5, 2008; Section 105(a) Report dated April 10, 2009; Tranche Report dated December 2, 2008 *available at* http://www.financialstability.gov/latest/reportsanddocs.html.

[7]  *See, e.g.,* Restructuring of the Government's Financial Support to American International Group, Inc. on November 10, 2008; Restructuring of the Government's Financial Support of to American International Group, Inc. on March 2, 2009 *available at* http://www.federalreserve.gov/monetarypolicy/bst_reports.htm.

[8]  *See* Ex. C.

[9]  *See, e.g.,* Special Inspector General for the Troubled Asset Relief Program ("SIGTARP"), Factors Affecting Efforts to Limit Payments to AIG Counterparties; SIGTARP, Extent of Federal Agencies' Oversight of AIG Compensation Varied, and Important Challenges Remain; SIGTARP, Initial Report to the Congress *available at* http://www.sigtarp.gov; *see also* Government Accounting Office ("GAO"), Federal Financial Assistance: Preliminary Observations on Assistance Provided to AIG; GAO, Troubled Asset Relief Program: Status of Government Assistance Provided to AIG *available at* www.gao.gov.

[10]  *See* http://www.sec.gov/edgar/searchedgar/companysearch.html.

bailout[,]" Ex. B at 2, AIG on numerous occasions, and that testimony is available on the

Government Printing Office's website.[11]

　　In addition to this publicly available information, Plaintiff has already obtained

significant discovery on the subjects set forth in the Notice of Deposition.  In response to

Plaintiff's Fed. R. Civ. P. 34 requests, Defendants have produced thousands of pages of non-

privileged documents regarding the November 2008 purchase of $40 billion of AIG preferred

stock pursuant to the EESA.  Even more significantly, pursuant to Fed. R. Civ. P. 30(b)(6),

Plaintiff has deposed witnesses from both the Board and the Department of the Treasury

regarding the same information he now seeks from Secretary Geithner.  *See* Amended Notice of

Deposition to U.S. Department of Treasury Pursuant to Fed. R. Civ. P. 30(b)(6) (Basil Kiwan)

(attached as Exhibit H); Notice of Deposition to U.S. Department of Treasury Pursuant to Fed. R.

Civ. P. 30(b)(6) (Jim Millstein) (attached as Exhibit I); Notice of Deposition to Board of

Governors of the Federal Reserve System Pursuant to Fed. R. Civ. P. 30(b)(6) (attached as

Exhibit J).  To the extent Plaintiff's questions to these witnesses were within the scope of these

notices, the witnesses' responses were made "on behalf" of their respective organizations. Fed.

R. Civ. P. 30(b)(6).  Additionally, Plaintiff deposed Michael Hsu, a former Department official

with personal knowledge of the Department of the Treasury's involvement with AIG, regarding

the purchase of AIG's preferred stock pursuant to the EESA.  *See* Amended Notice of Deposition

Pursuant to Subpoena (Michael Hsu) (attached as Exhibit K).  Further, as noted, to the extent

---

　　　　[11]  *See, e.g.,* U.S. House Committee on Financial Services, *Oversight of the Federal Government's Intervention at American International Group* (March 24, 2009) (attached as Exhibit E); Joint Economic Committee, *The Economic Outlook* (September 24, 2008) (attached as Exhibit F); U.S. Senate Committee on Banking, Housing, and Urban Affairs, *American International Group: Examining What Went Wrong, Government Intervention, and Implications for Future Regulation* (March 5, 2009) (attached as Exhibit G).

Plaintiff seeks to depose Secretary Geithner about AIG's use of federal funds, Plaintiff has already sought that information from AIG. *See supra* note 4; Ex. C. Therefore, Plaintiff cannot reasonably complain that he has not had ample opportunity to obtain testimony or other evidence about the subject matter contained in the present Notice of Deposition.

Finally, if Plaintiff is still not satisfied with the publicly available information and the discovery already provided by Defendants and others, there remain several other avenues to seek further information that he has not pursued. Plaintiff has not served any interrogatories upon either Defendant pursuant to Fed. R. Civ. P. 33, nor has Plaintiff served any requests for admission pursuant to Fed. R. Civ. P. 36. Furthermore, Plaintiff has not shown that no other entities or individuals other than Secretary Geithner can provide the information Plaintiff seeks. Plaintiff's only specific allegation in this regard is that the Board's 30(b)(6) witness did not provide satisfactory testimony about a specific Board meeting. However, two days after the deposition of the Board's 30(b)(6) witness, Defendant provided Plaintiff with the minutes of the specific Board meeting discussed at that deposition. Plaintiff has not suggested any reason to believe that the minutes do not reflect the meeting fully. Moreover, if Plaintiff alleges, and can establish, that the Board's 30(b)(6) witness was inadequately prepared to testify at deposition about information essential to Plaintiff's case, the proper recourse is for Plaintiff to seek another 30(b)(6) witness from the Board. Plaintiff is simply not permitted to depose Secretary Geithner before exhausting these other avenues. *See Bogan*, 489 F.3d at 424 ("The Bogans' argument founders because they did not pursue other sources to obtain relevant information before turning to the Mayor."); *In re United States (Holder)*, 197 F.3 at 314.[12]

---

[12] The two cases Plaintiff cites for the proposition that courts have applied the general rule against permitting the involuntary depositions of high-level government officials

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's

motion to compel and grant Defendants' motion for a protective order.

Respectfully submitted,

Dated: January 15, 2010                    TONY WEST
                                           Assistant Attorney General

                                           TERRENCE G. BERG
                                           United States Attorney

                                           JOHN R. GRIFFITHS
                                           Assistant Director, Federal Programs Branch

                                           s/ Julie Straus
                                           JULIE STRAUS
                                           JOHN R. COLEMAN
                                           Trial Attorneys, U.S. Department of Justice
                                           Civil Division, Federal Programs Branch

prudentially, rather than absolutely, actually support denying his present motion. In *Jackson v. City of Detroit*, 2007 WL 2225886, at *3 (E.D. Mich. Aug. 1 2007), the court granted a protective order barring the deposition of the city's police chief because the party seeking the deposition had failed to demonstrate that "the information sought could not adequately be discovered through other means, such as interrogatories." Similarly, while Plaintiff cites *Boudreau v. Bouchard*, 2008 WL 4386836, *3 (E.D. Mich. Sept. 25, 2008), in which the court refused to enter a protective order barring the plaintiff from deposing the county sheriff, Plaintiff misrepresents the court's subsequent decision to enter the protective order, 2009 WL 55912, at *3 (E.D. Mich. Jan. 8, 2009). Plaintiff asserts that the court barred the plaintiff from deposing the sheriff after determining that the sheriff "was not central to the issue and interrogatories would suffice." Pl.'s Mot. at 6, n.3. More accurately, the court ultimately entered the protective order upon finding that, despite the defendants' concession that the sheriff "ha[d] personal knowledge about th[e] matter" and "[i]t may even be said that [the sheriff] had superior knowledge since the ultimate. . . decision rested with him[,]" the plaintiff was not entitled to depose the sheriff because the plaintiff made "no showing that any information [the sheriff] may have . . . is not available from other sources or through less burdensome means." *Boudreau*, 2009 WL 55912, at *3. Clearly, in both cases, the court barred the deposition of the high-level official based on the availability of other sources or means of discovery.

20 Massachusetts Ave., N.W., Room 6126
Washington, D.C. 20530
Telephone: (202) 514-7857
Email: Julie.Straus@usdoj.gov

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 15, 2010, I electronically filed the foregoing paper with

the Clerk of the Court using the ECF system, which will send notification of such filing to the

following: Robert J. Muise, David Yerushalmi.

*s/ Julie Straus*
Julie Straus
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch

21

**INDEX OF EXHIBITS**

<u>**Exhibit**</u>      <u>**Description**</u>

A             Initial Proposal

B             Notice of Deposition to Timothy F. Geithner Pursuant to Fed. R. Civ. P. 30(a)(1)

C             Excerpts from Minutes of Meetings of the Federal Reserve Board of Governors (July 13 - December 16, 2008)

D             Notice of Subpoena on AIG

E             U.S. House Committee on Financial Services, *Oversight of the Federal Government's Intervention at American International Group* (March 24, 2009)

F             Joint Economic Committee, *The Economic Outlook* (September 24, 2008)

G             U.S. Senate Committee on Banking, Housing, and Urban Affairs, *American International Group: Examining What Went Wrong, Government Intervention, and Implications for Future Regulation* (March 5, 2009)

H             Amended Notice of Deposition to U.S. Department of Treasury Pursuant to Fed. R. Civ. P. 30(b)(6) (Basil Kiwan)

I             Notice of Deposition to U.S. Department of Treasury Pursuant to Fed. R. Civ. P. 30(b)(6) (Jim Millstein)

J             Notice of Deposition to Board of Governors of the Federal Reserve System Pursuant to Fed. R. Civ. P. 30(b)(6) (Jon Greenlee)

K             Amended Notice of Deposition Pursuant to Subpoena (Michael Hsu)