UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

KEVIN J. MURRAY

        Plaintiff,

-vs-

TIMOTHY F. GEITHNER, Secretary, U.S.
Department of the Treasury, and BOARD OF
GOVERNORS OF THE FEDERAL
RESERVE SYSTEM,

        Defendants.
_____/

CIVIL NO. 08-15147

HON. LAWRENCE P. ZATKOFF
MAG. JUDGE MONA K. MAJZOUB

**MEMORANDUM IN REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER**

# ARGUMENT

In order to demonstrate the "extraordinary circumstances" necessary to compel the testimony of the Secretary of the Treasury, Timothy F. Geithner, Plaintiff must "establish at a minimum that [the Secretary] possesses information essential to his case which is not obtainable from another source." *In re United States (Holder)*, 197 F.3d 311, 314 (8th Cir. 2000). Plaintiff has failed to demonstrate that Secretary Geithner's testimony would be relevant, let alone essential, to his Establishment Clause claim. Instead, Plaintiff appears to presume an entitlement to question the Secretary of the Treasury about a host of perceived problems with the government's assistance to American International Group, Inc. ("AIG"), none of which relate to Plaintiff's only claim—that by providing capital to AIG, the Department of the Treasury has sought to promote the Islamic religion. Defendants' motion should be granted for this reason, and also because Plaintiff has failed to demonstrate that he cannot obtain the information he seeks through other means.

## I. The Information Sought By Plaintiff is Not "Essential" to His Establishment Clause Claim

Plaintiff has only one claim in this case: that the Establishment Clause has been violated because the "direct consequence" of the Department of the Treasury's November 25, 2008 purchase of $40 billion of AIG preferred stock pursuant to the Emergency Economic Stabilization Act of 2008 ("EESA") is to "fund Islamic religious activities that are anti-Christian, anti-Jewish, and anti-American," Compl. ¶ 56; *see also* Compl. ¶ 1. To prevail on this claim, Plaintiff must show that the November 2008 purchase of AIG preferred stock pursuant to the EESA had either "the purpose or the effect of advancing or inhibiting religion." *Zelman v. Simmons-Harris*, 536 U.S. 639, 648-49 (2002). Any attempt to establish that the "purpose" of the EESA, as applied to the Department of the Treasury's purchase of $40 billion in AIG preferred stock, was to advance religion must rely on "readily discoverable fact" such as the "text, legislative history, and implementation" of the EESA,

- 1 -

and not through discovery into "the veiled psyche of government officers." *McCreary County, Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844, 862-63 (2005). Thus, as explained in Defendants' opening brief, even if Secretary Geithner (who was not Secretary of the Treasury at the time of the investment at issue in this case) had personal knowledge regarding the "purpose" of the investment that is not already public (and not privileged), that information would have no relevance to Plaintiff's Establishment Clause claim. *Id.* at 863. To show that the "primary effect" of the EESA, as applied to the Department of the Treasury's $40 billion investment in AIG, is to advance the Islamic religion, Plaintiff must prove (1) that the investment leads to religious indoctrination that could reasonably be attributed to government action; (2) that the Troubled Asset Relief Program established pursuant to the EESA defines its recipients by reference to religion; or (3) that the AIG investment creates an excessive entanglement between government and religion. *See Mitchell v. Helms*, 530 U.S. 791, 808 (2000). The information Plaintiff seeks from Secretary Geithner is not relevant to any of these inquiries.

Instead, Plaintiff seeks information related to the structure of an $85 billion credit facility provided to AIG by the Federal Reserve Bank of New York ("FRBNY") pursuant to its authority under Section 13(3) of the Federal Reserve Act, 12 U.S.C. § 343, on September 16, 2008. *See* Notice of Deposition to Timothy F. Geithner (Ex. B to Def. Mem.). Plaintiff contends that "[t]he facts surrounding the structure of the FRBNY Credit Facility and its purpose or rationale are . . . essential to Plaintiff's constitutional claim," Pl. Opp. at 2, because "$40 billion of the $85 billion Credit Facility were merely a 'placeholder' for $40 billion of TARP funds that followed only weeks later after the passage of the [EESA]." *Id.* at 3. And, based on this unsupported factual assertion, Plaintiff claims, without citation to any legal authority, that he should be permitted to, in effect, challenge the constitutionality of the Federal Reserve Act, as applied to the Federal Reserve Board's September 16, 2008 decision to authorize the FRBNY's loan to AIG, *see id.*, notwithstanding his

decision not to plead such a challenge, *see* Compl. ¶ 1.

Plaintiff's speculative and irrelevant "placeholder" argument cannot, however, serve as justification for the extraordinary discovery he seeks. As a matter of law, Plaintiff is simply not entitled to rest his Establishment Clause claim on a theory that the Department of the Treasury's purchase of $40 billion of AIG preferred stock on November 25, 2008, the proceeds of which were used by AIG exclusively to pay down its debt, permitted AIG to use other funds—including funds previously provided by the FRBNY— for religious purposes. *See Am. Atheists, Inc. v. City of Detroit Downtown Dev. Auth.*, 567 F.3d 278, 296 (6th Cir. 2009) ("The Supreme Court has repeatedly rejected 'the recurrent argument that all aid is forbidden because aid to one aspect of an institution frees it to spend its other resources on religious ends.'") (quoting *Hunt v. McNair*, 413 U.S. 734, 743 (1973)); *cf. Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 846-47 (1995) (O'Connor, J., concurring) (citing cases for the proposition that the government may provide funds to *sectarian* entities for secular purposes without violating the Establishment Clause). Thus, even if Plaintiff could demonstrate that AIG was using funds other than those received pursuant to the EESA to support religion (he cannot), his as-applied challenge to the EESA would fail.

Plaintiff's "placeholder" theory also fails because it is wholly unsupported by, and indeed contrary to, established fact. The Federal Reserve Board's decision to authorize the FRBNY to provide AIG with access to $85 billion in credit was made on Tuesday, September 16, 2008, in the midst of the greatest financial panic to confront this country since the Great Depression. The Department of the Treasury did not present to Congress its proposal for greater authority to address this crisis until early in the morning of Saturday, September 20, 2010. *See* Ex. A to Def. Mem. Further, this proposal did not permit the Secretary of the Treasury to make direct equity investments, but only to purchase mortgage-related assets. *Id.* at § 2(a). And, of course, Congress's willingness to enact a bill providing the Secretary of the Treasury with the authority to purchase $700 billion

- 3 -

of mortgage-related assets was not a foregone conclusion on September 20, 2010 (and certainly not on September 16, 2010), as the House of Representative's rejection of such a bill on September 29, 2008 clearly demonstrates. *See* 154 Cong. Rec. H10337-01, H10410-11 (Sept. 29, 2008). Thus, in light of the public record, the theory that Secretary Geithner, as he discussed the decision to authorize the provision of an $85 billion credit facility to AIG on September, 16, 2008, was "counting on TARP funds [which did not yet exist] flowing in to pay down the FRBNY Credit Facility," Pl. Opp at 5, is nothing more than fanciful speculation. It does not come close to demonstrating the sort of "extraordinary" circumstances needed to depose a cabinet secretary.

Plaintiff's theory is also contrary to the record in this case. Mr. Millstein, on behalf of the Department of the Treasury, testified that when the proposal for legislation that would become the EESA was transmitted to Congress (on September 20, 2008) nobody at the Department of the Treasury could have known whether AIG would require any additional funding. *See* Millstein Depo. at 29-31 (attached as Ex. A). Plaintiff may not like this answer,[1] but he is not entitled to depose the Secretary of the Treasury in a futile attempt to elicit a different one.

---

[1] Equally irrelevant is Plaintiff's concern with Mr. Greenlee's testimony, on behalf of the Board of Governors, that the AIG Credit Facility Trust was established with the U.S. Treasury as the ultimate beneficiary, and not the FRBNY, because the FRBNY cannot hold equity in a company. *See* Pl. Opp. at 5 & n.6. This testimony was corroborated by Mr. Millstein. *See* Millstein Depo. at 50 -51 (Ex. A). Furthermore, it is hardly unusual that the FRBNY would make the U.S. Treasury the ultimate beneficiary of any proceeds from a sale of the Series C Preferred Stock, given that all profits of Federal Reserve Banks are paid to the U.S. Treasury. *See Scott v. Fed. Reserve Bank of Kan. City*, 406 F.3d 532, 537 (8th Cir. 2005).

**II.     Plaintiff Has Not Demonstrated That the Information He Seeks Is Not Obtainable Without Deposing the Secretary of the Treasury**

Finally, even assuming the information Plaintiff seeks is relevant and essential to his claim, Plaintiff has failed entirely to demonstrate that the information cannot be obtained through interrogatories, requests for admission, or other forms of discovery. Plaintiff has not even pursued these other avenues of discovery. His failure to do so dooms his attempt to depose the Secretary of the Treasury. *See, e.g., Bogan v. City of Boston*, 489 F.3d 417, 424 (1st Cir. 2007 ) ("The Bogans' argument founders because they did not pursue other sources to obtain relevant information before turning to the Mayor."); *Jackson v. City of Detroit*, Case No. 05-cv-74236, 2007 WL 2225886, at *3-4 (E.D. Mich. Aug. 1, 2007) (barring deposition of the Detroit Police Chief because "the Court is not persuaded that the information sought could not be adequately discovered through other means, such as interrogatories.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion for a protective order.

Respectfully submitted,

Dated: February 4, 2010

TONY WEST
Assistant Attorney General

BARBARA L. MCQUADE
United States Attorney

JOHN R. GRIFFITHS
Assistant Director, Federal Programs Branch

s/ *John R. Coleman*
JOHN R. COLEMAN
JULIE STRAUS
Trial Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6118
Washington, D.C. 20530

- 6 -

        Telephone: (202) 514-4505
        Email: John.Coleman3@usdoj.gov

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: Robert J. Muise, David Yerushalmi.

*/s/ John R. Coleman*
John R. Coleman
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch