IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KEVIN J. MURRAY,<br><br>   Plaintiff,<br><br>  v.<br><br>TIMOTHY F. GEITHNER, in his official capacity as Secretary, U.S. Department of Treasury; and BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM,<br><br>   Defendants. | Case No. 08-15147<br><br>**MOTION TO DETERMINE SUFFICIENCY OF ANSWERS AND OBJECTIONS TO REQUESTS FOR ADMISSIONS**<br><br>[FED. R. CIV. P. 36]<br><br>Hon. Lawrence P. Zatkoff<br><br>Mag. Judge Mona K. Majzoub |

THOMAS MORE LAW CENTER
Robert J. Muise, Esq. (P62849)
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, MI 48106
rmuise@thomasmore.org
(734) 827-2001
Fax: (734) 930-7160
*Co-Counsel for Plaintiff*

LAW OFFICES OF DAVID YERUSHALMI, P.C.
David Yerushalmi, Esq. (Ariz. Bar No. 009616;
DC Bar No. 978179; Cal. Bar No. 132011; NY Bar No. 4632568)
P.O. Box 6358
Chandler, AZ 85246
david.yerushalmi@verizon.net
(646) 262-0500
Fax: (801) 760-3901
*Co-Counsel for Plaintiff*

U.S. DEPARTMENT OF JUSTICE
John R. Coleman (Va. Bar No. 70908)
Trial Attorney
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6118
Washington, DC 20530
john.coleman3@usdoj.gov
(202) 514-4505
Fax: (202) 616-8460
*Counsel for Defendants*

---

  Plaintiff Kevin J. Murray ("Plaintiff"), by and through his undersigned counsel, hereby moves this court to determine the sufficiency of certain answers and objections to written requests for admissions served on Defendants pursuant to Fed. R. Civ. P. 36. Plaintiff also

moves for an award of his reasonable expenses in making the motion, including attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(5).

Pursuant to E.D. Mich. LR 7.1, there was a conference between attorneys in which the movant explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

WHEREFORE, Plaintiff hereby requests that this court grant his motion and order that the matters set forth in the accompanying brief are admitted.

                                          Respectfully submitted,

                                          THOMAS MORE LAW CENTER

                                          /s/ Robert J. Muise
                                          Robert J. Muise, Esq.

                                          LAW OFFICES OF DAVID YERUSHALMI, P.C.

                                          David Yerushalmi, Esq.

                                          *Counsel for Plaintiff*

## ISSUE PRESENTED

Whether Defendants' answers and objections to certain written requests for admissions are sufficient under Fed. R. Civ. P. 36.

## MOST APPROPRIATE & CONTROLLING AUTHORITY

Fed. R. Civ. P. 36

**BRIEF IN SUPPORT OF MOTION**

This case presents an as-applied challenge to the "Emergency Economic Stabilization Act of 2008" (or "Act") (12 U.S.C. § 5201 et seq.) enacted by the United States Congress pursuant to Congress' taxing and spending power which appropriated and expended billions of dollars in taxpayer money to fund and financially support the United States government's majority ownership interest in American International Group, Inc. ("AIG"), which engages in Shariah-based Islamic religious activities and religious indoctrination.  The amended complaint alleges that the use of taxpayer funds to approve, promote, endorse, support, and fund Shariah-based Islamic religious activities and religious indoctrination, including the use of such funds to acquire government ownership and control in a company that engages in such activities, violates the Establishment Clause of the First Amendment to the United States Constitution.  (Doc. No. 45).

On February 27, 2009, Defendants filed a motion to dismiss the original complaint pursuant to Federal Rules 12(b)(1) and 12(b)(6), alleging that Plaintiff lacked standing as a federal taxpayer to bring this challenge and that the complaint failed to state a claim for relief under the Establishment Clause.  (Doc. No. 6).

In a lengthy and thorough opinion, this court denied Defendants' motion on May 26, 2009.  *Murray v. Geithner*, 624 F. Supp. 2d 667 (E.D. Mich. 2009).  In its opinion, the court relied principally upon U.S. Supreme Court decisions that clearly established Plaintiff's standing to advance his Establishment Clause claim and the legal basis for the claim.  *Id*.  Indeed, in its opinion, the court made the following relevant observations:

1

- "AIG is the market leader in Sharia-compliant financing, which features financial products that comply with the dictates of Islamic law." *Id*. at 669.

- "One of the most prominent examples of Sharia-compliant financing is Takaful Insurance, which avoids investments in 'prohibited elements in Islam according to Sharia.'" *Id*. at 670.

- "Plaintiff believes that the unregulated appropriation of funds to AIG was constitutionally impermissible." *Id*.

- "[The Act] expressly empower[s] an Executive Branch official to spend funds in accordance with the statute[]." *Id*. at 675.

- "[T]he United States government has a majority interest in AIG." *Id*. at 676.

- "Pursuant to the [Act], the government has injected AIG with tens of billions of dollars, without restricting or tracking how this considerable sum of money is spent." *Id.* at 675.

On February 24, 2010, Plaintiff served on Defendants Geithner and Board of Governors of the Federal Reserve System ("Fed") requests for admissions.[1]  On March 26, 2010, Defendants responded with insufficient answers and objections, prompting this motion. Discovery closes in this case on May 15, 2010.

## REQUESTS & INSUFFICIENT ANSWERS

Pursuant to E.D.Mich. LR 37.2, the following is a verbatim recitation of the requests for admissions, answers, and objections which are the subject of this motion:[2]

---

[1] Similar requests for admissions were served on Defendant Geithner and on the Fed, resulting in similar answers and objections. Consequently, this motion is brought against all Defendants.
[2] Each requested admission relates to an allegation set forth in the amended complaint. (*See* Doc. No. 45).

4. Defendant Geithner is charged by Congress with administering the Act, including TARP.

**Answer:** Defendant objects to this request as seeking a legal conclusion.

8. The Act is an express congressional mandate and a specific congressional appropriation to expend taxpayer funds.

**Answer:** Defendant objects to this request as vague, argumentative, and as seeking a legal conclusion.

10. The Act authorizes Defendant Geithner to establish TARP "to purchase, and to make fund commitments to purchase, troubled assets from any financial institution."

**Answer:** Defendant objects to this request as seeking a legal conclusion.

14. The taxpayer funds appropriated pursuant to the Act may not be used at the sole discretion of Defendant Geithner.

**Answer:** Defendant objects to this request as vague, argumentative, and as seeking a legal conclusion.

15. The taxpayer funds appropriated pursuant to the Act are not general appropriations provided to the Executive Branch to support its day-to-day activities.

**Answer:** Defendant objects to this request as vague, argumentative, and as seeking a legal conclusion.

19. Takaful insurance is an example of a Shariah-compliant financial product.

**Answer:** Defendant objects to this request as it asks a federal agency to admit or deny a specific interpretation of religious terms, not a fact, the application of law to fact, or an opinion about either.

22.     Pursuant to the Act, Congress authorized the Secretary, U.S. Department of Treasury, to expend taxpayer funds to support the operations of AIG.

   **Answer:** Defendant objects to this request as vague, and as seeking a legal conclusion.

23.     The Act does not require Defendant Geithner, the Fed, or any other officer or agency of the U.S. Government to police the expenditure of taxpayer funds to ensure that they are not being used to fund businesses providing Shariah-compliant financial products.

   **Answer:** Defendant objects to this request as vague, argumentative, and as seeking a legal conclusion.

24.     The Act does not provide any mechanism by which the U.S. Government or its agents, including Defendant, could police the expenditure of taxpayer funds to businesses providing Shariah-compliant financial products.

   **Answer:** Defendant objects to this request as vague, argumentative, and as seeking a legal conclusion.

28.     The Act authorized the use of federal taxpayer funds to financially support the operations of AIG to prevent AIG's collapse.

   **Answer:** Defendant objects to this request as vague, argumentative and as seeking a legal conclusion.

34.     Pursuant to the Act, Congress, through the Secretary, U.S. Department of Treasury, authorized the expenditure of $40 billion in TARP funds to AIG.

   **Answer:** Defendant objects to this request as seeking a legal conclusion.

40.     As a result of the expenditure of federal funds, including the expenditure of TARP funds pursuant to the Act, the U.S. Government has a vested interest in the success of AIG.

**Answer:** Defendant objects to this request as argumentative, ambiguous, and vague.

41.     As a result of the expenditure of federal funds, including the expenditure of TARP funds pursuant to the Act, the U.S. Government stands to profit from the success of AIG.

**Answer:** Defendant objects to this request as argumentative, ambiguous, and vague.

49.     The U.S. Treasury is not a valid beneficiary for the Trust because it is not an entity, government body, agency, or department capable of acquiring a legal or beneficial interest in any asset.

**Answer:** Defendant objects to this request as argumentative, as seeking irrelevant information, and as seeking a legal conclusion.

62.     The Fed maintains ultimate discretion and authority over the powers, terms, and existence of the Trust.

**Answer:** Defendant objects to this request as argumentative, as seeking a legal conclusion, and as seeking irrelevant information.  To the extent a response is required, deny, except to admit that the AIG Credit Facility Trust Agreement states "that the Board of Governors may terminate or amend its authorization pursuant to Section 13(3) of the Federal Reserve Act, thereby revoking or amending the Trust in accordance with Federal law. . . ."

85.     U.S. Government officials are involved in the operations of AIG, which remain under congressional oversight and scrutiny.

**Answer:** Defendant objects to this request, specifically the terms "U.S. Government officials," "involved," "oversight," "operations," and "scrutiny," as vague, ambiguous and unduly burdensome.[3]

102. The U.S. Government could unilaterally alter any and all agreements it had entered into with AIG by forcing a shareholder meeting and the use of a proxy statement or by simply replacing the board with those who would follow its orders (the agreements could also be unilaterally changed to allow the Trustees, the Fed, the U.S. Department of Treasury, or Congress to appoint its own board members).

**Answer:** Defendant objects to this request as vague, ambiguous, speculative, as seeking a legal conclusion, and as seeking irrelevant information.

103. The Trustees could unilaterally alter any and all agreements it or the U.S. Government had entered into with AIG by forcing a shareholder meeting and the use of a proxy statement or by simply replacing the board with those who would follow its orders (the agreements could also be unilaterally changed to allow the Trustees, the Fed, the U.S. Department of Treasury, or Congress to appoint its own board members).

**Answer:** Defendant objects to this request as vague, ambiguous, speculative, as seeking a legal conclusion, and as seeking irrelevant information.

180. At the time of the creation of the Credit Facility, the Fed, through the FRBNY, was able to buy AIG-held securities or assets through loans to off-balance sheet special purpose vehicles

---

[3] Defendants' responses are internally inconsistent. Consider the following request: "86. U.S. Government agents and officials have attended and participated in meetings at AIG following the passage of the Act. **Answer**: Admit."

6

("SPVs") such as Maiden Lane II and III, which provided AIG liquidity without adding debt to AIG's balance sheet.

**Answer:** Defendant objects to this request as argumentative, as seeking irrelevant information and as seeking a legal conclusion.

181.   The Credit Facility Trust is invalid.

**Answer:** Defendant objects to this request as seeking irrelevant information and as seeking a legal conclusion.

182.   The Credit Facility Trust is illegal.

**Answer:** Defendant objects to this request as seeking irrelevant information and as seeking a legal conclusion.

## ARGUMENT

Pursuant to Fed. R. Civ. P. 36, a matter is admitted *unless a proper response* is served within 30 days of the service date of the request. Fed. R. Civ. P. 36(a)(3). A proper request to admit may relate to "***facts, the application of law to fact, or opinions about either***." Fed. R. Civ. P. 36(a)(1)(A) (emphasis added).

In 1970, Rule 36 was amended to allow for requests applying law to fact. Fed. R. Civ. P. 36 advisory committee's note. However, "[t]he amended provision does not authorize requests for admissions of law *unrelated to the facts of the case*." *Id*. (emphasis added). Thus, Rule 36 does not require a party to admit rules of law or legal conclusions not based on the facts of the dispute between the parties. On the other hand, Rule 36 does allow a request that requires the answering party to apply the rules of law to the facts of the case being litigated. As the court in *S.A. Healy Company/Lodigiani USA, Ltd. v. United States*, 37 Fed. Cl. 204 (1997), observed:

7

> Requests for admissions are not objectionable even if they require opinions or conclusions of law, *as long as the legal conclusions relate to the facts of the case*. Opinions on abstract propositions of law are still objectionable, but requests seeking admission of the truth of statements applying law to the facts of the case are specifically sanctioned by the advisory committee notes to the 1970 amendments to federal rule 36.

*Id.* at 205 (internal quotations, punctuation, and citation omitted) (emphasis added); *see also Abbott v. United States*, 177 F.R.D. 92, 93 (N.D.N.Y. 1997) ("The Advisory Committee Note to the 1970 amendments of Rule 36(a) further explains that a request to admit may concern 'matters involving mixed law and fact.' What is improper under Rule 36, however, is a request to admit a pure matter of law."); Fed. R. Civ. P. 36 advisory committee note (1970) ("Not only is it difficult as a practical matter to separate 'fact' from 'opinion,' but an admission on a matter of opinion may facilitate proof or narrow the issues or both. An admission of a matter involving the application of law to fact may, in a given case, even more clearly narrow the issues.") (internal citation omitted).

Moreover, "where the question of the meaning of the document is at issue in the case, a request directed to another party seeking admission or denial of *a document's meaning or intent* by that party as stated in the request relates to *a statement [of] fact*, and it is authorized by Rule 36." *Booth Oil Site Admin. Group v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000) (emphasis added); *Diederich v. Department of the Army*, 132 F.R.D. 614, 617 (S.D.N.Y. 1990) (stating that "objections that documents . . . 'speak for themselves' . . . are improper").

Finally, "[t]hat a request seeks admissions on 'ultimate facts,' or is dispositive of the entire case, is irrelevant. . . . The rule expressly states that a party may not refuse to respond to a request on the sole ground that the 'matter of which an admission has been requested presents a

8

genuine issue for trial.'" *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 253 (6th Cir. 1979).

Rule 36 further provides that the requesting party may move to determine the sufficiency of an objection or answer, and the court may order that an answer be served or order either that the matter is admitted or that an amended answer be served.  Fed. R. Civ. P. 36(a)(6).

Here, each request addresses either facts or the application of law *to the facts of this case*.  Consequently, Defendants' answers are insufficient because Plaintiff's requests are specifically sanctioned by Fed. R. Civ. P. 36 and, therefore, not objectionable.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this court grant his motion and order that the above-stated matters are admitted.  Further, Plaintiff respectfully requests that this court award Plaintiff his reasonable expenses in making the motion, including attorney's fees.

    Respectfully submitted,

    THOMAS MORE LAW CENTER

    /s/ Robert J. Muise
    Robert J. Muise, Esq. (P62849)

    LAW OFFICES OF DAVID YERUSHALMI, P.C.

    David Yerushalmi, Esq.

    *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2010, a copy of the foregoing MOTION TO DETERMINE SUFFICIENCY OF ANSWERS AND OBJECTIONS TO REQUESTS FOR ADMISSIONS was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: None.

THOMAS MORE LAW CENTER

/s/ Robert J. Muise
Robert J. Muise, Esq. (P62849)