## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**KEVIN J. MURRAY,**

       **Plaintiff,**          **CIVIL ACTION NO. 08-cv-15147**

      **vs.**            **DISTRICT LAWRENCE P. ZATKOFF**

**UNITED STATES**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**DEPARTMENT OF**
**TREASURY, SECRETARY OF,**
**et al.,**

       **Defendants.**
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF DEFENDANT TIMOTHY F. GEITHNER PURSUANT TO FED. R. CIV. P. 37(A)(3)(b)(i) (DOCKET NO. 31) AND GRANTING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER (DOCKET NO. 36)

This matter comes before the Court on two motions. The first is Plaintiff's Motion To Compel Deposition Of Defendant Timothy F. Geithner Pursuant To Fed. R. Civ. P. 37(a)(3)(B)(i) filed on December 14, 2009. (Docket no. 31). Defendants filed a Response Memorandum In Opposition on January 15, 2010. (Docket no. 35). Plaintiff filed a Reply Brief on January 22, 2010. (Docket no. 38). The second Motion is Defendants' Motion For A Protective Order filed on January 15, 2010. (Docket no. 36). Plaintiff filed a Response Brief In Opposition on January 28, 2010. (Docket no. 40). Defendants filed a Memorandum In Reply on February 4, 2010. (Docket no. 43). These matters were referred to the undersigned for determination pursuant to 28 U.S.C. § 636(b)(1)(A). (Docket nos. 32, 37). The Court dispenses with oral argument on these matters

pursuant to E.D. Mich. Local Rule 7.1(f).  (Docket no. 39).  The matters being fully briefed the motions are ready for ruling.

Plaintiff brings this action as an

[A]s-applied challenge to the 'Emergency Economic Stabilization Act of 2008' (or 'Act') (12 U.S.C. 5201 et seq.) enacted by the United States Congress pursuant to Congress' taxing and spending power, which appropriated and expended to date, $70 billion in taxpayer money to fund and financially support the United States government's majority ownership interest in American International Group, Inc. ('AIG'), which engages in Shariah-based Islamic religious activities and religious indoctrination.  It also seeks to prevent any future expenditure of taxpayer funds appropriated pursuant to the Act that will be used for such illicit purposes. (Plaintiff's First Amended Complaint, docket no. 45 ¶ 1).

On May 26, 2009 the District Court denied Defendants' Motion to Dismiss and found that Plaintiff has standing to bring his Establishment Clause claim.  (Docket no. 12).  The District Court also found that Plaintiff had sufficiently plead his case to avoid dismissal at that stage.  (Docket no. 12).  The Court's May 26, 2009 Order sets forth the background in detail.  (Docket no. 12).  In September 2008 the Federal Reserve Bank of New York (FRBNY) created a credit facility by which it enabled AIG to draw federal funds up to $85 billion, collateralized by AIG's assets.   In return, AIG entered into a credit facility agreement under which it agreed to pay interest and fees to the FRBNY and issue Series C preferred stock to the "AIG Credit Facility Trust," which held the stock for the benefit of the United States Treasury.  (Docket no. 12, 45).  Defendant Secretary Geithner was the President of FRBNY at that time.

On October 3, 2008 Congress passed the Emergency Economic Stabilization Act of 2008 (EESA), the Act at issue.  12 U.S.C. § 5201 (2010).  By the authority granted under the EESA, the Treasury Secretary established the Troubled Asset Relief Program (TARP) "to purchase, and to make fund commitments to purchase, troubled assets from any financial institution . . . ."  12 U.S.C.

§5211(a)(1).  On November 25, 2008, the Treasury Secretary, pursuant to his authority under EESA, purchased "$40 billion of newly issued AIG perpetual [Series D] preferred shares and warrants to purchase a number of shares of common stock of AIG equal to 2% of the issued and outstanding shares as of the purchase date."  (Docket no. 12).  AIG represented in a press release that all of the proceeds would be used to pay down the FRBNY credit facility.  (Docket no. 12).  Plaintiff alleges that as a result of this transaction the government "gained super-majority controlling voting rights and liquidation preference with a TARP equity investment."  Plaintiff amended his Complaint to add a claim for an additional $29.835 billion in TARP funds provided to AIG on April 17, 2009.

Plaintiff alleges that AIG engages in Shariah-compliant financing, "which subjects certain financial activities, including investments, to the dictates of Islamic law and Islamic religion." (Docket no. 45 ¶ 71).  Plaintiff alleges that because AIG employs consolidated financing "all funds going to AIG, including those public funds provided in anticipation of the passage of the Act [the FRBNY funds] and the funds appropriated by Congress pursuant to the Act [EESA], are used to financially support all of AIG's activities, including its Islamic religious activities."  (Docket no. 45 ¶ 70).

Plaintiff argues that Defendant Secretary Geithner, in both his capacity as the current Secretary of the Treasury and his previous position as the president of the Federal Reserve Bank of New York, is "uniquely situated to testify about how and why American International Group, Inc. ('AIG'), was the recipient of the funds from the both Fed and from the Treasury, the very funds that are at issue" in Plaintiff's complaint.  (Docket no. 31).

Plaintiff moves the Court to compel Defendant Secretary Geithner to appear for deposition. Plaintiff served a Notice of Deposition on Defendant Secretary Geithner on November 30, 2009

-3-

noticing deposition at a mutually agreeable time and place.  (Docket no. 31-6).  There is no argument as to the sufficiency of the Notice of Deposition.  Defendants oppose Plaintiff's motion and move for a protective order pursuant to Fed. R. Civ. P. 26(c) to prevent the deposition of Defendant Secretary Geithner.

**Analysis**

Plaintiff served a Notice of Deposition for Defendant Geithner, Secretary of the Treasury, on November 25, 2009. (Docket no. 31-6).  The Notice of Deposition identifies six topics on which Plaintiff seeks to depose Defendant Secretary Geithner.  Plaintiff asserts that the topics cover two areas: Decisions to provide financing to AIG and the structure of the financing.  Defendants object, pursuant to Fed. R. Civ. P. 26(c) to the taking of the deposition of Defendant Secretary Geithner.  Defendants argue that there are no extraordinary circumstances justifying Defendant Secretary Geithner's deposition as a cabinet level official, the information sought is not relevant, and any information that is marginally relevant and not readily available from other sources is likely protected from disclosure by the deliberative process privilege or the attorney-client privilege. (Docket no. 36).

Rule 26(c), Fed. R. Civ. P., allows the court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, . . . ." Fed. R. Civ. P. 26(c)(1).  Both parties acknowledge the general rule that high-ranking government officials are not generally subject to deposition and neither party argues that Defendant Geithner, currently the Secretary of the Treasury and past-President of the FRBNY, is not a high-ranking official.  Courts recognize the responsibilities and time constraints incumbent on high ranking officials and that testifying in every case to which the agency or administration is a party would

monopolize the official's time. *See In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *see also Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) ("top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions"); *U.S. v. Morgan*, 313 U.S. 409, 422 (1941) (noting that the District Court should not have allowed the Secretary of Agriculture to be subjected to deposition including about the process by which he reached the conclusions of his order; comparing the Secretary's proceeding to a judicial process, the Court noted that "the integrity of the administrative process must be equally respected").

Plaintiff relies on *Boudreau v. Bouchard* and *Jackson v. City of Detroit* to show that the rule is not absolute and that a party seeking deposition must show that "the official has first hand knowledge related to the claim being litigated" and that "other persons cannot provide the necessary information." *Boudreau v. Bouchard*, 2008 U.S. Dist. LEXIS 75611 *4 (E.D. Mich. Sept. 25, 2008); see also *Jackson v. City of Detroit*, 2007 U.S. Dist. LEXIS 55730 (E.D. Mich. Aug. 1, 2007).  In *Boudreau*, the District Court allowed the deposition of the Defendant sheriff in an action alleging wrongful discharge, gender discrimination, slander and libel on the basis that the sheriff's testimony was highly relevant and the information could not be obtained from another source because he had direct and unique knowledge. *Boudreau*, 2008 U.S. Dist. LEXIS 75611 at *9.  The court limited the deposition to two hours.  The court later reconsidered its decision based on the receipt of additional evidence and concluded that although the sheriff had personal knowledge about the matter ("it may even be said that [he] has superior knowledge since the ultimate termination decision rested with him") it was not shown that any information he had was not available through other sources or less burdensome means.  *See Boudreau v. Bouchard*, 2009 U.S. Dist. LEXIS 1347 at *7-8 (E.D. Mich.

Jan. 8, 2009). The Court disallowed the sheriff's deposition but allowed Plaintiff to propound interrogatories.

The *Jackson* plaintiff made a showing that the high-ranking official he sought to depose, the chief of police, had "some personal knowledge of the facts in the case." *Id.* at \*9.  As the *Jackson* court pointed out, however, the court was "not persuaded that the information sought could not adequately be discovered through other means, such as interrogatories."  *Id.*

Defendants rely on *In re United States (Holder)* for the premise that the information sought must also be "essential" to the case.  *See In re United States (Holder)*, 197 F. 3d 310, 314 (8th Cir. 1999) (A movant seeking to depose high government officials Attorney General and Deputy Attorney General must establish that "the Attorney General and the Deputy Attorney General possess information essential to his case which is not obtainable from another source.  This means both that the discovery sought is relevant and necessary and that it cannot otherwise be obtained.").

It is presumed that Defendant Secretary Geithner may have some first-hand knowledge of many of the events surrounding the funds and the EESA by which the funds were distributed, which is the subject of Plaintiff's Establishment Clause claim.  In 2008, at the depth of the economic crisis, Defendant Secretary Geithner was president of the Federal Reserve Bank of New York, the first governmental entity to extend financial support to the ailing AIG.

It is not enough however, that the high-ranking official has personal knowledge of information related to the subject matter of the action.  Rule 26, Fed. R. Civ. P., requires that the discovery sought be relevant to the claims or defenses in the action. Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(1), Fed. R. Civ. P., allows discovery "regarding any non-privileged matter that is relevant to any party's claim or defense . . . .  For good cause, the court may order discovery of any matter

-6-

relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).  The parties dispute the relevance of Defendant Secretary Geithner's testimony.

As set forth above, Plaintiff seeks to depose Defendant Secretary Geithner on six topics which cover two areas: Decisions to provide financing to AIG and the structure of the financing. In his Motion to Compel, Plaintiff also argues that Defendant Secretary Geithner's testimony is relevant to areas of inquiry which were posed to Defendants' 30(b)(6) deponents.  *See* Fed. R. Civ. P. 30(b)(6).  Plaintiff argues that each of the 30(b)(6) deponent's testimony was insufficient and/or contradicted meeting minutes.  Plaintiff also points out that the 30(b)(6) deponents identified then-FRBNY President Geithner in response to some of the questioning.  Plaintiff calls Defendant Secretary Geithner's testimony "essential to uncover the details surrounding the decision about the structure, timing, and logistics of the $85 billion FRBNY credit facility" because the 30(b)(6) deponent Greenlee's testimony "was manifestly false regarding key facts."  (Docket no. 31 at 9). The Court does not find persuasive Plaintiff's argument that because the Defendants' 30(b)(6) deponent's testimony was allegedly inconsistent with public record and/or meeting minutes or because the deponent identified Defendant Secretary Geithner in response to some of the questions that Plaintiff has established the necessity of deposing high-ranking official Defendant Secretary Geithner. (Docket no. 31 at 8).  The sufficiency of a designated 30(b)(6) deponent is a separate issue from that of the relevance of the discovery sought from Defendant Secretary Geithner and the necessity of deposing a high-ranking official.

Plaintiff also argues that Defendant Secretary Geithner's testimony is relevant to his "placeholder" allegations that the Federal Reserve Bank of New York "demanded AIG to provide it with Series C Preferred Shares representing 77.9% of the aggregate voting power of AIG common

shares but had AIG actually assign these shares through a kind of slight-of-hand to a trust for the benefit of the U.S. Treasury."   (Docket no. 31 at 9, see also Docket 45 ¶ 35).

Despite Plaintiff's argument that Defendant Secretary Geithner is uniquely situated to testify based upon his personal knowledge as to the facts "regarding the decision by the Fed to provide a credit facility to AIG and the involvement of Defendant Secretary Geithner, Secretary Paulson and Chairman Bernanke in this decision," Plaintiff has failed to show the relevance of this information to his as-applied Establishment Clause claim[1].

Plaintiff's claims arise under the Establishment Clause of the First Amendment to the United States Constitution, which provides that "Congress shall make no law respecting an establishment of religion . . . ." U.S. CONST. amend. I.  Courts have construed the clause as preventing government from "enacting laws that have the 'purpose' or 'effect' of advancing or inhibiting religion." *Zelman v. Simmons-Harris*, 536 U.S. 639, 648-49 (2002) (citations omitted).  The test for examining an Establishment Clause challenge is set forth in *Lemon v. Kurtzman*, "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" *See Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971) (citations omitted); *see also Zelman*, 536 U.S. at 649 (Where there is "no dispute that the program challenged here was enacted for [a] valid secular purpose . . . . the question presented is whether the . . . program nonetheless has the forbidden 'effect' of advancing or inhibiting religion.").

---

[1]Since the filing and briefing of these motions, the Court allowed Plaintiff amend his Complaint "insofar as the proposed amended complaint contains allegations regarding additional appropriated funds." (Docket nos. 44, 45).  The First Amended Complaint contains allegations of an additional nearly $30 billion provided to AIG pursuant to TARP.  The Court denied Plaintiff's request to add AIG as a party.

In an Establishment Clause claim, the scrutiny of the legislative purpose of a statute is a "straightforward" test. *McCreary County Ky. v. American Civil Liberties Union of Ky.*, 545 U.S. 844, 862 (2005); *see also Americans United for Separation of Church and State v. City of Grand Rapids*, 980 F.2d 1538, 1543-44 (6th Cir. 1992) (en banc) (Establishment Clause queries are conducted under the objective reasonable observer standard."). "[S]crutizing purpose does make practical sense, as in Establishment Clause analysis, where an understanding of official objective emerges from readily discoverable fact, without any judicial psychoanalysis of a drafter's heart of hearts." *See McCreary County Ky.*, 545 U.S. at 862. "The eyes that look to purpose belong to an 'objective observer,' one who takes account of the traditional external signs that show up in the 'text, legislative history, and implementation of the statute, . . .' or comparable official act." *Id.* at 862. As set forth in the District Court's Opinion and Order of May 26, 2009, "[i]t is beyond question that the EESA does not violate the Establishment Clause on its face." (Docket no. 12). Instead, Plaintiff challenges the application of the EESA as it relates to AIG[2]. (Docket nos. 12, 45 ¶ 1). Plaintiff alleges that AIG engages in Sharia-compliant financing and Shariah-based Islamic religious activities and the United States now has an ownership interest in AIG supported and funded by $70 billion in "taxpayer money" as a result of the EESA.

Here, Plaintiff is not challenging the "purpose" of the EESA but the effect of the EESA as applied. Despite Plaintiff's arguments about the factual areas of which Defendant Secretary Geithner has knowledge, Plaintiff has simply failed to demonstrate the relevance to the claims at

---

[2] Even if Plaintiff's claims were read broadly enough to challenge the FRBNY's actions, including the structure of the credit extended to AIG, pursuant to the Establishment Clause, the same analysis would apply. The Court also notes that the District Court's order found that Plaintiff has standing to raise his challenge pursuant to the Establishment Clause and neither Plaintiff's claims nor the Court's Order extend beyond the Establishment Clause.

issue.  Even if Plaintiff seeks to challenge the "purpose" of the Act and government actions at issue pursuant to the  Establishment Clause, the analysis looks to objective signs.  Plaintiff has provided no legal authority for the premise that Defendant Secretary Geithner's decision making, beyond what is available in "readily discoverable fact" and "traditional external signs" is relevant to Plaintiff's claim.  Even where Plaintiff alleges that there is some "fraudulent or misleading context to the structure by which the FRBNY structured the credit which was extended to AIG and the ensuing transfer of stock into a Trust for the benefit of the Treasury," Plaintiff's Complaint and pleadings fail to show the relevance of these allegations to his Establishment Clause claim. *McCreary County, Ky.*, 545 U.S. at 864 ("Establishment Clause analysis does not look to the veiled psyche of government officers").

        As evidenced by both Plaintiff's and Defendants' pleadings, the public record is rife with the objective signs necessary to scrutinize the purpose of the provision of federal funds to AIG, the EESA, the EESA's purpose and its application, including the agreements by which the funds were extended to AIG and the earlier FRBNY credit facility and accompanying trust were structured. Plaintiff seeks to examine Defendant Secretary Geithner's decisions and reasoning behind the structure of the FRBNY credit facility, trust and financing, beyond what is available in the public record, agreements and meeting minutes.  *See, e.g.,* Federal Reserve Board Meeting Minutes (docket no. 31-11); Written Testimony of Secretary Timothy F. Geithner (House Comm. on Oversight and Gov't Reform, Jan. 27, 2010) (docket no. 40-4).  Despite numerous cases cited by Defendants which show the narrow circumstances under which discovery may be sought from a high-ranking official and cases specifically holding that subjective intent of the government official is not relevant to an Establishment Clause analysis, Plaintiff has failed to cite any case law supporting his assertion that

Defendant Secretary Geithner's reasoning and decision-making process, beyond what is available in the public record, is relevant to Plaintiff's Establishment Clause claims[3].  In fact, Plaintiff failed to explain the relevance to, or even reference, the Establishment Clause (the claim for which the District Court found Plaintiff has standing) or related law, in his seventeen page response to Defendants' Motion for Protective Order.  (Docket no. 40).

The Court finds that the information sought from Defendant Secretary Geithner regarding his decisions is not relevant to the claims or defenses in this action.  The Court also notes that any information sought regarding the structure of the financing (other than Defendant Secretary Geithner's subjective reasoning and decisions) is likely available from one or more other individuals or sources.  (Docket no. 31-6).  As Defendants pointed out in their Response to Plaintiff's Motion and in their Reply with respect to their own Motion for Protective Order, at the time of filing their Motion to Compel, Plaintiff had not attempted to obtain the information he seeks through other means, such as interrogatories[4].  (Docket no. 43 at 5).

Defendant Secretary Geithner's testimony regarding decisions to provide government financing to AIG is neither relevant nor necessary to Plaintiff's claims.  Therefore, Plaintiff has not established the circumstances necessary to require the deposition of Defendant Secretary Geithner.

---

[3] In response to Defendants' attorney-client privilege argument, Plaintiff states that he "is not interested in the specific advice Defendant Secretary Geithner received from his attorneys; he is interested in discovering the reasons for the decisions that were ultimately made– and testing the veracity of these reasons in light of the contradicting facts and public record." Plaintiff has not shown how this decision making process is relevant to his Establishment Clause claim and has provided no legal support for this position.

[4] The Court notes, however, that choosing a less burdensome format for seeking discovery does not defeat Rule 26's requirement that the discovery sought be relevant.  Fed. R. Civ. P. 26(b)(1).

The Court will deny Plaintiff's Motion to Compel Deposition of Defendant Timothy F. Geithner Pursuant To Fed. R. Civ. P. 37(a)(3)(B)(i).  The Court will grant Defendants' Motion For A Protective Order pursuant to Fed. R. Civ. P. 26(c).  (Docket no. 36).

Because the Court has determined that the discovery sought from Defendant Secretary Geithner is not relevant to the claims or defenses in this action and Plaintiff has not met the requirements for deposing a high ranking official, the Court need not reach Defendants' deliberative process privilege and attorney-client privilege arguments.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion To Compel Deposition Of Defendant Timothy F. Geithner Pursuant To Fed. R. Civ. P. 37(a)(3)(B)(i) (docket no. 31) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion For A Protective Order (docket no. 36) is **GRANTED** barring Plaintiff from deposing Defendant Secretary Geithner.

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: May 18, 2010            s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE
                               **PROOF OF SERVICE**

I hereby certify that a copy of this Opinion and Order was served upon Counsel of Record on this date.

Dated: May 18, 2010                     s/ Lisa C. Bartlett

-12-

Case Manager